### LANE v. POWELL.

A cook and steward on board a sea-going vessel, who conceals persons on board and thus causes them to be carried to sea without the knowledge of the master or owner, is guilty of a breach of discipline for which he may be arrested and confined until he can be delivered up to the proper civil authorities at the nearest port, to which the vessel may sail for that purpose.

In such case the master will not be liable for false imprisonment if he uses no more force than is necessary to return to port and deliver up the offender to the proper authorities.

THIS was an action for false imprisonment.

The plaintiff, a negro, was steward and cook on board a schooner trading between New York, and Norfolk, Virginia.

On a return trip from Norfolk it was discovered that the plaintiff had concealed in his galley a negro woman and child, whom he admitted he was trying to smuggle to New York that they might obtain their freedom.

The defendant, who was the captain of the vessel, immedi-

Lane v. Powell.

ately put the plaintiff in irons and returned to Norfolk, where he delivered up to the authorities the steward and the woman and child. The steward was tried and convicted under the laws of Virginia, and sentenced to twelve years imprisonment, which he was undergoing at the time of the trial.

*H. Dresser*, for plaintiff, insisted:—

1. That the act of plaintiff in secreting the slaves, although felony by the laws of Virginia, can only be regarded here as an act of humanity. It was not felony by our law or the common law.

2. Slavery is a local institution and can be regarded as existing only by force of positive local statutes, and plaintiff might have been arrested, if he had been on the soil of Virginia, but, being at sea, he was out of the jurisdiction of that State.

3. Defendant was not an officer of the State of Virginia, and had no power to make the arrest.

*N. B. Blunt*, contra, claimed:—

That the defendant, as master of the vessel, had a right to arrest the defendant and deliver him over to the civil authorities; because he violated the discipline of the vessel by concealing passengers on board, and because when he received the slaves on board he was on the soil of Virginia, where the act was a felony, and of such a nature as to endanger the forfeiture of the vessel, and the liberty of its officers and crew.

*The Circuit Judge* charged the jury that the defendant, as master of the vessel, had a right to imprison the plaintiff if he had cause to suspect him of being engaged in the perpetration of what was a felony by the laws of the place where they were, or that he had violated the discipline of the vessel by using, surreptitiously and without consent, the property of the owners, or by taking on board and concealing passengers without the master's consent, or by any act which endangered the vessel or the voyage. The duty of the plaintiff as

steward and cook was not only to avoid, but actually to pre-
vent any act whereby the property and interests of the owners
would be endangered, and the only question for the jury was
to inquire if the master had used more force than was neces-
sary, and done any act not called for in the performance of
his duty.

There was a verdict for defendant.

It will be interesting to state that immediately after the
trial the following correspondence took place between the
judge and the governor of Virginia:

JUDGE'S CHAMBER, CITY HALL,
NEW YORK, June 12, 1846.

To His Excellency the Governor of Virginia—

SIR: A suit was recently tried before me at the present nisi
prius term of the Supreme Court in my circuit, which induces
me to address myself to you as the chief magistrate of Vir-
ginia.

It appeared on the trial that a colored man, by the name
of James D. Lane, a native of this city, having a wife and
child here, was, in the year 1843, tried and convicted of ab-
ducting two persons from your State, who were claimed to be
slaves, for which he was sentenced to twelve years imprison-
ment in your penitentiary, where he is now confined.

It appeared also that another colored man was steward and
cook on board the schooner Empire, a regular packet between
this port and Norfolk, who, in February, 1843, was taken sick,
and employed Lane to take his place for a single voyage.
Lane had never been on that voyage before, and was ignorant
of your laws. While the schooner was lying at Norfolk, Lane
was frequently visited by a negro of that place, with whom
he became intimate, and who solicited Lane to bring that
negro's wife and child to New York with him. There was
no pretence but that Lane had reason to believe the wife and
child were slaves, and that it was against your laws for him
to do so, but it was evident that he did not know the conse-

quences of the act, and had yielded to the importunities of the husband and father, and to a feeling of compassion.

After the vessel was three days out on her return to this port, the woman and child were found concealed in a part of the vessel appropriated to the use of the cook, and Lane was immediately arrested and taken back to Norfolk, where he was thus tried and convicted.

The suit thus tried before me was brought in Lane's name, by his friends here, against the master of the vessel for false imprisonment, and was sought to be maintained on the ground that it was not lawful to hold human beings in bondage — that Lane's abduction of these persons could not be a felony, and that therefore the arrest by the captain was unjustifiable.

The jury were instructed that it was their duty to respect the institutions of Virginia, a part of which constituted the offense charged against Lane, felony, and if they believed Lane to have done the acts imputed to him, it was their duty to acquit the master in that suit. The jury did so promptly, and there the matter will doubtless end.

It is under these circumstances, with my feelings of compassion much awakened for the unfortunate condition of Lane himself, for an interesting wife and child whom he has left unprotected here, and for his connexions, who were represented on the trial to be highly respectable, that I am induced to suggest to you whether all the salutary purposes of his condemnation, whether as regards the admonition to him and to others against any repetition of the offense, or as regards the vindication of your sovereignty, have not been answered by the three years imprisonment to which he has already been subjected, and by the result of this trial.

Far be it from me to attempt to interfere in the administration of justice in a sister State, and I trust your excellency will hold me acquitted of any such presumption, and will rather regard me as one who, from his position, has become acquainted with circumstances of extenuation, of which the executive of your State must necessarily be ignorant, and is

therefore a suppliant only that they may have their due weight with the pardoning power.

And if there are no facts in the case, unknown to me, which mark it as one demanding vindictive punishment, that then I may farther be regarded as respectfully soliciting his release.      I am, with great respect,

Your obedient servant,

J. W. EDMONDS.

EXECUTIVE DEPARTMENT,
RICHMOND, Va., June 22, 1846.

SIR: The letter addressed by you to the governor, under date of the 12th, was received here on the 17th inst., the governor being absent, as he still is, but daily expected at the seat of government. His prompt attention will be given to the subject of your letter, there can be no doubt, so soon as he returns.      I am, very respectfully,

Your obedient servant,

WM. H. RICHARDSON,

Sec'y Commonwealth.

The Hon. J. W. EDMONDS, New York.

EXECUTIVE DEPARTMENT,
RICHMOND, Va., July 10, 1846.

SIR: The governor has finally considered the subject of your letter addressed to him on the 12th ult., after having submitted it for the advice of the Council of State.

The offense for which the convict Lane was condemned is one which the policy of our laws require in general should be punished with rigor and severity. This policy is the more urgent in consequence of the immunity and protection which has been sometimes afforded to such criminals by the State authorities in the Northern States, and particularly in New York. The attempt to recover damages in New York, from the captain of the vessel who manifested so commendable a spirit of respect for our laws as to bring back the abducted slaves, at great inconvenience, was calculated to induce a

stronger disposition to let the law take its course in the case of Lane.

The executive, however, cannot be indifferent to an appeal for clemency coming from so high a source as the judge of a court which has so signally manifested its own respect for our rights, and has so firmly and effectually exerted its official influence and authority for the protection of one who was exposed to danger for obedience and regard to the rights of our citizens and the vindication of our laws. Strongly impressed with a desire to yield to such an appeal, from such a source, and relying upon the mitigating circumstances and other considerations stated by you, and especially on the assurance from you that the proceedings against the captain were instituted, not by Lane, but by others in his name, and hoping that the interposition of executive clemency, under the circumstances of this case, may exert a salutary moral influence on the public feeling in the Northern States, on subjects of this kind, the governor has granted a pardon to the prisoner.

I have the honor to be, very respectfully,

Your obedient servant,

WM. H. RICHARDSON,

Sec'y Commonwealth.

The Hon. J. W. EDMONDS, New York.